G5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SANDRA SCHAEFER, | ) |
| Plaintiff, | ) ) ) ) |
| vs. | ) Case No. 04 C 3876 |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) ) ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Sandra Schaefer appeals from the denial of her application for Social Security Disability Insurance benefits. For the reasons stated below, the Court affirms the ruling of the Administrative Law Judge.

### Facts

Schaefer alleges that she became disabled as of May 1, 1991, though she did not apply for benefits until December 2000. Schaefer's date last insured (DLI) was September 1995 and therefore she was required to prove that she had become disabled by that time. 20 C.F.R. § 404.621(a)(1).

Prior to May 1991, Schaefer worked as a bus driver for handicapped children and as a waitress. In her position as a waitress, Schaefer was on her feet for hours and regularly had to carry trays weighing ten to fifteen pounds. As a bus driver, she had to push children in

1

wheelchairs in and out of the bus. Under Social Security guidelines, the waitress and driver positions qualify as "light, semi-skilled work." Light work is defined as work involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b).

Schaefer claims she quit both jobs because of back pain. She began seeing a chiropractor, Patrick Balsier, D.C., in 1990. He diagnosed her with sciatic neuralgia secondary to lumbar discopathy at L4-L5, L5-S1, and she underwent physical therapy for approximately a year and a half. R. 116. Balsier last saw Schaefer on December 21, 1991, and there is no indication that she consulted with a medical professional for her back after that date and before the DLI. There was no record of Balsier's diagnosis and treatment of Schaefer until January 17, 2001, when Balsier wrote a letter at Schaefer's request for consideration of the DIB application.

As a result of a fall in September 1994, Schaefer suffered a severe displaced radial head fracture of her right elbow. The fracture was comminuted, meaning that the radial head of her elbow was fragmented into small pieces. R. 196. Dr. Shimkus, an orthopedic surgeon, diagnosed this injury and recommended nonoperative treatment and a course of physical therapy. Dr. Shimkus recognized that other doctors might reasonably recommend surgery, and thus, he referred Schaefer to Dr. Komanduri, another orthopedic surgeon, for a second opinion. Dr. Komanduri saw Schaefer on three occasions during September and October 1994. He advised Schaefer that the pain in her elbow could be reduced through elbow replacement surgery, though he noted that "I cannot fix this radial head fracture as it is crushed and radial head replacement is ... less than optimal." R. 113. He advised her that replacement surgery was problematic because it would likely cause significant loss of function in her hand; Schaefer declined to have the

2

surgery. R. 168. Schaefer last visited Dr. Komanduri on October 21, 1994. At that time, Dr. Komanduri reported that Schaefer was "doing great" with good range of motion and full extension. R. 111. He also noted that Schaefer reported intermittent crepitance and pain, which he opined might represent arthritis or a loose body in the elbow. *Id.* Finally, Dr. Komanduri wrote that he would not be continuing to provide Schaefer with care because she had sold her home in Illinois and reported that she was going on a "long-term camping trip." *Id.*

In late 1994, Schaefer and her husband moved into a mobile home and began living in the South during the winter (either Texas or Arizona) and in Illinois during the summer. Schaefer characterizes this move not as a long-term camping trip, but rather as an arrangement they were forced into by her husband's health problems, including emphysema and asthma, which required that he avoid extreme temperatures.

The medical records reveal that Schaefer did not consult a doctor about her elbow or back pain from October 1994 through December 1997. In December 1997, while residing in Arizona, Schaefer began to see an orthopedic surgeon, Michael Steingard, D.O., for her back and elbow problems. She reported to Dr. Steingard that some of these problems were the effects of a motor vehicle accident which occurred in 1996, after the DLI. Dr. Steingard indicated that x-rays of Schaefer's back showed some problems existed, including a bulging disc, but that there was no evidence of a herniation or spinal stenosis. R. 128-30. Dr. Steingard did find serious problems with her elbow, however, and recommended surgery to alleviate the pain. Schaefer agreed and underwent surgery to remove loose bone fragments from her elbow.

As of February 1998, Dr. Steingard noted that though Schaefer's back condition had improved, she continued to experience pain and tenderness in her elbow area. R. 126. The pain

continued throughout 1998, leading Dr. Steingard to perform a second surgery to remove bone fragments in January 1999. R. 118. After this surgery, the pain decreased but Schaefer still experienced stiffness, weakness, and abnormalities in range of motion. R. 120. On December 5, 2000, Dr. Steingard injected steroids into Schaefer's elbow in an attempt to relieve her pain. Schaefer testified that she had not experienced a significant change in her condition since 1995. R. 176.

In July 2001, Schaefer returned to Dr. Komanduri, whom she had not seen since 1994. Dr. Komanduri performed an x-ray of her elbow, which showed a healed fracture with a moderate degree of degenerative changes. Though the fracture had healed, he noted that Schaefer had "exquisite pain and tenderness over the radial head site" and reported that she had experienced "chronic radial head pain" since the injury occurred in 1994. R. 133. Dr. Komanduri wrote that the purpose of his 2001 treatment note was in part to clarify his notes from 1994 and correct any suggestion that his prior notes should be read to indicate that Schaefer's elbow injury was not a significant impairment.

In addition to her back and elbow problems, Schaefer asserts that she was diagnosed in the 1980's with lupus dermatitis and fibromyalgia. R. 180. She claims that fibromyalgia causes muscle pain throughout her body which is exacerbated by staying in one position - i.e. sitting or standing - for an extended period of time. As a result of the lupus, Schaefer gets skin lesions if she exposes herself to the sun. She claims that she has had two skin lesions removed. Schaefer, however, offered no records of any medical treatment regarding these alleged conditions.

Finally, Schaefer claimed at the hearing that she cannot deal with her health problems through medication because she is allergic to synthetic codeine and suffers from acid reflux

4

which causes her to have reactions to most pain medications. R. 183.[1] As a result, Schaefer testified that she can only take Tylenol for pain relief. *Id.* Again, however, she offered no medical records that supported these claims.

Schaefer applied for DIB on December 18, 2000. After her application was denied by the Social Security Administration (SSA), Schaefer requested a hearing in front of an Administrative Law Judge (ALJ). Schaefer was represented by counsel at the hearing. The ALJ denied Schaefer's claim, and his decision became the final decision of the SSA on April 9, 2004, when the Appeals Council denied Schaefer's appeal. 20 C.F.R. § 404.981. This appeal followed.

### The ALJ's Decision

To establish disability, a claimant must show that she is unable to engage in any substantial gainful activity due to the existence of a "medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The claimant must be unable to do not only her previous work, but also any other form of substantial gainful work considering her age, education, and work experience. *Id.* The Social Security Act prescribes a five step analysis for determining whether a claimant can engage in substantial gainful activity: (1) is the claimant presently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do the claimant's impairments meet or exceed any specific impairments listed within the Code of Federal Regulations which the commissioner of Social Security acknowledges to be conclusively disabling; (4) are the claimant's impairments of

---

[1] Schaefer suggests that she has been taking Celebrex for two years for pain relief but that the last time she visited the doctor a liver problem showed up and therefore she stopped taking the drug. R. 184.

5

such a nature that they limit his remaining or residual functional capacity to the degree that he is no longer able to perform the duties and demands of a former occupation; and (5) is the claimant unable to perform any other work in the national economy considering her age, education, and work experience. *Butera v. Apfel*, 173 F.3d 1049, 1054 (7th Cir. 1999). The claimant bears the burden of proof through step four of the evaluation. *Id.*

The ALJ held Schaefer's hearing on June 21, 2002. The ALJ heard testimony from three witnesses: Schaefer; Dr. John Cavenagh, a medical expert; and Timothy Bobrowski, a vocational expert. On August 20, 2002, the ALJ issued a written opinion in which he denied benefits, finding that as of her DLI, Schaefer had the ability to perform the duties of her former occupations.

The ALJ discussed the medical evidence and the testimony of Dr. Cavenagh and concluded that "the objective findings ... fail to provide strong support for [Schaefer's] allegations of disabling symptoms and limitations." R. 20. The ALJ noted that there were no medical records dating to 1990, when Schaefer claimed to have become disabled, and that her elbow fracture had not taken place until 1994. *Id.* He also noted that on Schaefer's last visit with Dr. Komanduri before she sold her home, he had noted that she had a good range of motion in her elbow. R. 20-21. The same was true, the ALJ noted, in 2000 according to Dr. Steingard. The ALJ made reference to the 2001 report from Schaefer's chiropractor but noted that it contained no objective findings. R. 21.

In sum, the ALJ stated, "the only medical impairment which the evidence shows is the fracture of the right elbow," for which Schaefer had been treated and which had improved, and which posed only a "slight limitation" on her. R. 21. There was no medical evidence to support

a finding that Schaefer had lumbar disc disease, fibromyalgia, or lupus dermatitis. *Id.* Based on this evidence, the ALJ concluded, Schaefer had "the ability to perform a significant and full range of light work" at all times prior to her DLI. *Id.*

The ALJ went on to state that he found Schaefer's testimony to be "not fully credible." He reasoned as follows:

> As indicated above, [Schaefer] alleged disability since May 1991, but there are no indications anywhere in the record that she had any severe impairments at that time. The only significant evidence in the record which documents the existence of a severe impairment is the evidence relating to her fractured right elbow from September 1994. As described above, the evidence relating to her right elbow does not disclose that this impairment would have precluded all work activities. As indicated in the medical records, the claimant and her husband sold their home and began living a life-style which allowed them to travel extensively and avoid winters in the North. The claimant testified that this was due to her husbands [sic] medical condition, however, there is no evidence which substantiates that allegation anywhere in the record. The lack of medical treatment when compared to the claimant's testimony at the hearing as to severe pain in multiple sites in her body, along with the diseases of fibromyalgia and lupus dermatitis, indicates that the testimony in this case cannot be found to be fully credible. Certainly, in this case, the claimant has not produced compelling evidence which indicates the presence of severe functional limitations or pain as of or prior to September 30, 1995.

R. 22. The ALJ recited, without elaboration, that he had considered the factors in 20 C.F.R. § 404.1529(c)(3) and Social Security Ruling 96-7p. R. 23.

Based on the testimony of the vocational expert, the ALJ concluded that Schaefer could perform the duties of her past work and thus was not disabled. R. 23.

## Discussion

This Court reviews the ALJ's decision to determine whether it is supported by substantial evidence. 42 U.S.C. § 405(g). "Evidence is considered substantial if a reasonable person would accept it as adequate to support a conclusion." *Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir.

2004). The ALJ must "build a logical bridge from the evidence to his conclusion," *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002), and "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004), but he need not "provide a 'complete written evaluation of every piece of testimony and evidence.'" *Schmidt v. Barnhart*, ___ F.3d ___, 2005 WL 77158, *7 (7th Cir. Jan. 14, 2005) (quoting *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)).

Schaefer argues that the ALJ failed to confront the portions of the medical record that did not support his decision. Specifically, she contends that the ALJ ignored testimony by Dr. Cavenagh that there was evidence to support her complaints of elbow pain but that the ALJ ignored that testimony. The Court disagrees. Dr. Cavenagh testified that Schaefer had, and has, pain in her elbow, and that this was supported by the medical evidence. R. 191-92. But he also concluded that Schaefer had normal function of her elbow. R. 191. The ALJ likewise recognized that Schaefer suffered from pain in her elbow. R. 22. He relied, however, on the evidence showing lack of a functional limitation, concluding that Schaefer's pain did not limit her ability to perform her former work. *Id.* The Court concludes that the ALJ took into account the evidence supporting Schaefer's claim of pain and sufficiently explained his basis for rejecting that evidence.

Schaefer argues that the ALJ acted inappropriately in finding her testimony to be lacking in credibility. The applicable regulations and the Seventh Circuit's decisions "require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility

finding." *Schmidt,* 2005 WL 77158, *9.

The ALJ in Schaefer's case, however, did not rely merely on a conflict between Schaefer's testimony and the medical evidence. First of all, the record was replete with such conflicts. Schaefer claimed to suffer from medical conditions – fibromyalgia and lupus dermatitis – that were unsupported by any medical records or testimony at all. She claimed that she was unable to work from 1991 through 1994 based on an alleged back condition that was not supported by any contemporaneous medical evidence. In addition, the contemporaneous records regarding the state of her elbow in 1995 reflected an insignificant effect on her range of motion resulting from her injury.

Second, the ALJ relied not just on the lack of objective medical evidence but also on the fact that Schaefer had not sought treatment for the conditions she claimed were disabling. Schaefer claimed to be unable to work starting in 1991 – before her elbow injury – due to back pain. But there was no evidence that she had sought anything other than intermittent chiropractic treatment for her back between December 1991 and her DLI of September 1995. In addition, as noted above, Schaefer provided no evidence to corroborate any claim that she had sought treatment for her alleged lupus dermatitis or fibromyalgia. Moreover, for a significant period before and after the DLI, Schaefer sought treatment only intermittently for the primary condition at issue in this case, her elbow fracture and the resulting pain. The ALJ appropriately took this evidence into account in assessing the believability of Schaefer's complaints.

Third, it was not inappropriate for the ALJ to rely on the fact that Schaefer traveled extensively. The reasons for her travel – a matter on which the ALJ expressed skepticism of Schaefer's claims – are less significant in this regard than what Schaefer's travel said about her

functional capacity. Though there is a significant difference between being able to engage in sporadic physical activities and being able to work eight hours per day, *see, e.g., Carradine v. Barnhart,* 360 F.3d 751, 755-56 (7th Cir. 2004), this is not a case in which the ALJ relied entirely on the claimant's daily activities to reject her testimony regarding her alleged restrictions. Rather, the ALJ's decision reflects that he considered this as one of several factors, which he appropriately could do. *See Schmidt,* 2005 WL 77158, *9 (citing ALJ's consideration of claimant's daily activities as supporting rejection of claimant's credibility).

Under the circumstances, the Court concludes that the ALJ's rejection of Schaefer's credibility was properly supported and sufficienty explained, such that the Court cannot conclude that his determination was "patently wrong." *Schmidt,* 2005 WL 77158, *8 & *9 (quoting *Herron v. Shalala,* 19 F.3d 32, 335 (7th Cir. 1994)).

In sum, the Court finds that the ALJ's conclusion that Schaefer was not disabled from performing her past relevant work was supported by substantial evidence and that the ALJ committed no legal or procedural errors in reaching that conclusion.

## Conclusion

For the reasons stated above, the Court grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment. The Clerk is directed to enter judgment in favor of the defendant.

MATTHEW F. KENNELLY
United States District Judge

Date: January 31, 2005

10